## BURTIS *v*. MUNISING CO.

CONTRACTS—CONSTRUCTION—ACTS OF PARTIES.

*Plaintiff and defendants entered into a contract by which plaintiff agreed to construct a sawmill, and the defendants the Munising and Lac La Belle Companies agreed that 40-000,000 feet of timber from their lands should be furnished and delivered to plaintiff for sawing, at $2.50 per M. The Munising Company sold its standing timber to C., with an agreement that it should be sawed at plaintiff's mill, and that the price for sawing should be reduced 2 per cent. for cash. C. had no negotiations or contract with plaintiff. The Munising Company notified plaintiff of the arrangement it had with C., and asked him to reduce the price for sawing. Plaintiff refused, and insisted on the contract price. C. paid plaintiff according to his agreement with the Munising Company. Plaintiff sued the Munising and Lac La Belle Companies to recover the unpaid balance. *Held,* that they were liable under the contract as interpreted by their own acts and conduct.

Error to Alger; Steere, J. Submitted April 18, 1901. Decided May 21, 1901.

* Head-note by GRANT, J.

*Assumpsit* by George L. Burtis against the Munising Company and the Lac La Belle Company, impleaded with the Munising Railway Company, to recover the balance of a saw bill. From a judgment for plaintiff, defendants bring error. Affirmed.

In September, 1895, and for a long time prior thereto, plaintiff owned and operated a sawmill in the city of Marquette. The defendants the Munising and the Lac La Belle Companies owned large tracts of land in the vicinity of Munising, situated on the shores of Lake Superior. It was the desire of these companies to have a sawmill erected at Munising. Plaintiff and the defendants, with this purpose in view, entered into an agreement on that day, of which the material parts are as follows:

"*Whereas*, the Munising Company, of Cleveland, Ohio, is the owner of about eighty-four thousand acres of land in Alger county, Michigan, a portion of which is along the navigable waters of Munising or Grand Island Bay; and *Whereas*, the Lac La Belle Company, of La Porte, Indiana, is the owner of one hundred thousand acres in the same county, and which adjoin upon, and are partly intermingled with, the lands of the said the Munising Company; and *Whereas*, the Munising Railway Company is engaged in building a railway from the said bay in three directions,—southeastwardly towards Manistique, northeastwardly towards Grand Marais, and southwestwardly towards the Chicago & Northwestern Railroad,— for the purpose of making available the timber upon the said lands; and *Whereas*, it is proposed to furnish to the large purchasers of the timber on the said lands free mill sites upon the said bay, and to connect the same with the railway to be constructed; and *Whereas*, George L. Burtis, of Marquette, Michigan, has now a sawmill in the said city of Marquette, and desires to remove and enlarge the same, and to engage in the business of manufacturing lumber upon the said bay:

"Now, therefore, this agreement, made this 20th day of September, 1895, by and between the parties hereinbefore mentioned, and their successors or assigns, witnesseth: In consideration of the covenants and agreements hereinafter contained, to be performed by the said the Munising

Company, Lac La Belle Company, and the Munising Railway Company, the said George L. Burtis agrees to at once select a mill site [describing it]. As soon as this contract is executed by the several parties, the said Burtis will at once enter upon the said site, and in due season, at his own cost and expense, get out piles and timbers, and make and erect the said docks, booms, and tramways, as before suggested, in good, substantial, and rapid manner. He will also erect the sawmill, putting therein two first-class band saws for sawing logs, and the latest improved machinery for manufacturing lumber in an economical, good, and workmanlike manner, and having the same done and completed, so that sawing will be ready to commence in the said mill on or before June 1, 1896.

"The said Burtis agrees to saw forty million feet of white and Norway pine logs, which are to be furnished from the lands of the Munising Company and the Lac La Belle Company, for the price and sum of two dollars and fifty cents per thousand feet; this price to include the manufacturing, the assorting in the varieties usually made for cargo shipments, namely, shorts, saps, mill culls, 10 and 12 stocks, and the various thicknesses, by themselves, no grading requiring the services of an experienced grader to be required of said Burtis, and piling upon the dock upon navigable waters convenient for shipment, with no extra charge for carrying or storing said lumber unless for more than ninety days, with no charge for storing between the closing and opening of navigation. Lumber, when piled, to be at owner's risk. He will also saw any hemlock logs that may come from the lands of the said the Munising Company and the said Lac La Belle Company on the same conditions as provided hereinafter for hardwood. He will also saw any hardwood logs from the lands of the two companies, and pile the same convenient for shipment, at such reasonable prices as may be agreed upon hereafter. All slabs, edgings, and other refuse from logs to belong to said Burtis.

"He agrees that the manufacturing of the lumber in the said mill, the assorting, handling, and piling of the same as above, is to be done under the direction of the owners of the logs, and to their entire satisfaction; and he agrees to reimburse and pay the said log owners for any unusual amount of lumber that is injured by reason of being poorly manufactured. The said mill to have a capacity for manufacturing not less than fifteen million feet of lumber in the ordinary milling season in each year, and the said Burtis

agrees to manufacture therein not less than ten million feet each year, unless prevented by delays from strikes and unavoidable accidents.

"The said the Munising Company and the Lac La Belle Company agree and guarantee to the said Burtis that forty million feet of pine timber from their lands as above provided, or, if so much pine cannot be profitably lumbered, then of hemlock or other timber, shall be furnished and delivered to the mill that he shall erect upon the said bay, within the next five years, and to deliver annually eight millions or more during each sawing season (that is, between May 1st and October 1st), beginning May 1, 1896, until said forty million feet shall have been furnished. The timber so to be furnished shall at all times have the preference, and shall be sawed before timber offered by any other parties. They also agree to recommend and encourage the purchasers of the timber on small tracts of their lands to ship the same to the said Burtis for manufacturing, but the logs to be manufactured, sorted, piled, and stored at the price and upon the conditions hereinbefore stated.    *    *    *

"It is understood that, while the said the Munising Company and the Lac La Belle Company will encourage the purchasers of small quantities of hardwood timber to have their sawing done at the mill of the said Burtis, it is nevertheless not to be prohibited from giving the purchasers of the timber on large tracts of land free sites for sawmills upon said bay; it being fully understood that the said two land companies and the railway company desire to make the said bay a manufacturing center, and agree to assemble at that place, and to put in marketable form, the timber tributary to 80 or more miles of railway which they expect to build and operate.

"If the Munising Railway Company, the Lac La Belle Company, or the Munising Company shall themselves log and manufacture any timber,—pine, hemlock, or hardwood, —it is agreed that, subject to the conditions hereinbefore mentioned, all such timber shall be brought to mill of said Burtis for manufacture."

This contract was carried out, and the mill erected. The Munising Company sold to Comstock Bros. the pine timber from its lands. This sale was made through one Scott, the agent of the company, and upon the agreement that the sawing was to be done at plaintiff's mill.

Comstock Bros. demanded of the defendant company, through Scott, a reduction of 2 per cent. from the contract price for sawing. Scott assured Comstock Bros. that a discount of 2 per cent. would be allowed for cash. This was the agreement made between Scott and the Comstock Bros. Plaintiff was not a party to it. After the sale was made, Scott wrote to Burtis, stating the sale had been made to Comstock Bros., and saying: "You must help me out on the discount on the saw bill for prompt cash, of 2 per cent." Burtis declined to accept the proposition, and insisted upon the contract price. The logs were delivered by Comstock Bros. to the plaintiff, sawed, and he received from Comstock Bros. 98 per cent. of the contract price. Plaintiff sued to recover from the defendants the balance of the saw bill, basing his right of action upon the contract above set forth. Plaintiff recovered verdict and judgment.

*Charles R. Brown & Son*, for appellants.

*A. B. Eldredge*, of counsel for appellant Lac La Belle Co.

*Henry B. Freeman*, for appellee.

GRANT, J. ( *after stating the facts* ). It was conceded upon the trial that the conversation between Scott and Comstock Bros. created no independent liability on the part of the defendants, and that the receipt of 98 per cent. of the saw bill by plaintiff from Comstock Bros. created no estoppel upon his part, and that the sole purpose of this testimony was to aid in the interpretation of the contract. The defendant companies guaranteed to plaintiff 40,000,000 feet of timber to manufacture. They were under contract obligation to furnish it, or to cause it to be furnished. If they had failed to do so, they would have been liable in an action for breach of contract. This timber was furnished as a part of the stipulated amount, and the Munising Company, in its dealings with

126 MICH.—44.

Comstock Bros. and with the plaintiff, clearly recognized the binding force of that contract. The Munising Company made this concession as to the sawing price in order to accomplish its sale. It acted through its authorized agent, whose principal was evidently cognizant of the negotiations. The parties had a right, and it was the duty of the company, to contract that the timber should be sawed at plaintiff's mill at the agreed price. It had no right to contract for a less price. Comstock Bros. saw the contract between plaintiff and defendants, understood its terms, and made their contract upon the theory that the Munising Company had the right to contract with them in regard to the sawing price, and that the company would be bound to make good the difference, should plaintiff refuse to accede to the reduction. Upon this theory the company asked plaintiff to assent to the reduction. He promptly refused to be bound thereby, and told that company that he would hold it liable for the difference. Plaintiff had no express contract with Comstock Bros. He could not have recovered against them the contract price for sawing. If plaintiff had sued Comstock Bros., upon what basis could he have recovered from them, after he had recognized the contract between them and the company, had informed the company that he should demand from it the difference, and, in the face of his protest, the company had proceeded to carry out its contract with Comstock Bros.? To that suit Comstock Bros. would evidently have replied: "We did not contract with you; we contracted with the Munising Company under its contract with you." But, if plaintiff could have maintained a suit against Comstock Bros., it would have been on an implied contract to pay what the sawing was worth, and not the price of the contract between plaintiff and defendants. All the parties acted upon the theory that the defendants were bound to pay the contract price, and that, if either of them saw fit to reduce it, it must make up the difference. If there were any doubt about the construction of the contract, the Munising Company,

by its conduct in dealing with Comstock Bros. and the plaintiff, construed it against the claim it now sets up. No question is raised as to the liability of the Lac La Belle Company for the separate acts of the Munising Company.

Judgment is affirmed.

The other Justices concurred.